## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA**    )

                             )

       **v.**                     )

                             )

**THOMAS M. FINNERAN**       )

**05** CR **1 0 1 4 0** RGS

**CRIMINAL NO.**
**VIOLATIONS:**
**18 U.S.C. § 1623 - Perjury**
**18 U.S.C. § 1503 - Obstruction of Justice**

### INDICTMENT

**COUNT ONE:**     (18 U.S.C. § 1623 - Perjury)

The Grand Jury charges that:

1. On or about November 14, 2003, a three judge panel appointed by the chief judge of the United States Court of Appeals for the First Circuit, and sitting as a session of the United States District Court, District of Massachusetts ("the Court"), was hearing evidence in a civil lawsuit brought by the Black Political Task Force and other plaintiffs against William Francis Galvin, as the Secretary of State for the Commonwealth of Massachusetts in a case captioned Black Political Task Force v. Galvin, District of Massachusetts, Civil Number A 02-11190 ("the lawsuit"). The Court was seeking to determine, among other things, whether Chapter 125 of the Massachusetts Acts of 2001 (the "Redistricting Act"), relating to the establishment of electoral districts for the Massachusetts House of Representatives, violated the Fourteenth and Fifteenth Amendments to the United States Constitution, and Section 2 of the federal Voting Rights Act, 42 U.S.C. § 1973, by discriminating against African-American and Hispanic voters in the City of Boston, and depriving those minority voters of the same right to participate in the political process and to elect representatives of their choice as other members of the electorate.

2. At all times material to this Indictment, THOMAS M. FINNERAN was a member of

1

the Massachusetts House of Representatives serving the 12th Suffolk District, which was comprised of precincts from the City of Boston and the Town of Milton, Massachusetts. At all times material to this Indictment, THOMAS M. FINNERAN also served as the Speaker of the Massachusetts House of Representatives, the elected leader and presiding officer of that legislative body.

3. The Black Political Task Force and other plaintiffs sought to prove in the lawsuit that the Redistricting Act was the product of unlawful and unconstitutional "racial gerrymandering" that diluted the ability of African-American and Hispanic voters to elect state representatives of their choice from the City of Boston. As part of their proof, the Black Political Task Force and other plaintiffs sought to establish that the Redistricting Act "superpacked" African-American voters into one or more legislative districts of incumbent African-American legislators, and "whitened" the legislative districts of three incumbent white legislators, including the district represented by THOMAS M. FINNERAN. The Black Political Task Force and other plaintiffs also sought to prove, among other things, that legislators and others involved in crafting the Redistricting Act, including THOMAS M. FINNERAN, unlawfully acted to protect the legislative seats of incumbent legislators at the expense of racial fairness. The Black Political Task Force and other plaintiffs also sought to establish that legislators and others involved in crafting the Redistricting Act, including THOMAS M. FINNERAN, unlawfully used race as a proxy in achieving incumbency protection.

4. The identification of those individuals involved in, and who influenced, the creation of the committee plan which served as a basis for the Redistricting Act was material to the matters before the Court in the lawsuit. The process and manner in which the representative

2

districts in the City of Boston, including but not limited to THOMAS M. FINNERAN's district,

were redrawn during the legislative process were material to the matters before the Court in the

lawsuit. The purpose for which the representative districts in the City of Boston, including but

not limited to THOMAS M. FINNERAN's district, were redrawn in the redistricting process was

material to the matters before the Court. THOMAS M. FINNERAN's role in the creation of the

committee plan which served as a basis for the Redistricting Act, particularly as it relates to the

redrawing of district lines in the City of Boston, was material to the matters before the Court.

5. On or about November 14, 2003, in Boston, in the District of Massachusetts, the

defendant,

### THOMAS M. FINNERAN,

having duly taken an oath that he would testify truthfully, and while under oath and testifying in

United States District Court in Boston, in the District of Massachusetts, before the Court in the

case Black Political Task Force v. Galvin, District of Massachusetts, Civil Number A 02-11190,

knowingly did make false material declarations, as follows:

- Q    And did you review a number of the redistricting plans as the process proceeded?

- A    No, I did not.

- Q    Did you review any of the redistricting plans as the process proceeded?

- A    Not as the process proceeded. No sir.

- Q    Okay. When was the first time you saw a redistricting plan?

- A    It would have been after the committee on redistricting filed its plan with the House Clerk as a member who has an interest. All members do have an interest. I would have availed myself of it and made a review of it.

- Q    So the first time you saw a redistricting plan was when the redistricting committee disseminated its plan to the full House; is that your testimony?

3

A    That is my testimony. Yes, sir.

Q    Did you know what was going to be in that redistricting plan before it was distributed?

A    No, I did not.

The declarations of defendant THOMAS M. FINNERAN, which are underscored above, as he then and there well knew and believed, were false, in that:

i.    On or about October 18, 2001, the Joint Special Committee on the Redistricting and Reapportionment ("the Committee") filed its plan with the clerk of the House of Representatives, and made that plan available to the general membership of the House of Representatives;

ii.    Prior to October 18, 2001, and on or about September 18, 2001, THOMAS M. FINNERAN met with the House Chairman of the Committee and others for the purpose of reviewing a redistricting plan as it related to the districts in the vicinity of Springfield, Massachusetts. At that meeting, THOMAS M. FINNERAN reviewed a redistricting plan as it related to that area and, among other things, provided comments and instruction as to how two districts should be merged in the redistricting plan to be proposed by the Committee;

iii.    Prior to October 18, 2001, and on or about October 9, 2001, THOMAS M. FINNERAN, met with the House Chairman of the Committee and others for the purpose of reviewing a redistricting plan. At that meeting, THOMAS M. FINNERAN and others reviewed a redistricting plan for each district in the Commonwealth of Massachusetts, including a plan for changes to the 12th Suffolk District. At that meeting, THOMAS M. FINNERAN made comments on a redistricting plan presented to him and provided direction as to how that redistricting plan should be altered;

4

iv.    Prior to October 18, 2001, and on or about October 11, 2001, THOMAS M.

FINNERAN participated in a conference call with the House Chairman of the Committee and

others, for the purpose of reviewing and discussing a redistricting plan, and in fact reviewed such

a redistricting plan;

v.    Prior to October 18, 2001, and on or about the morning of October 15, 2001,

THOMAS M. FINNERAN participated in a meeting with the House Chairman of the Committee

and others, during which a redistricting plan was reviewed;

vi.    Prior to October 18, 2001, and on or about the afternoon of October 15, 2001,

THOMAS M. FINNERAN participated in a meeting with the House Chairman of the Committee

and others, including one or more members of the House of Representatives from the area of

Worcester, Massachusetts, during which a redistricting plan for the districts in and surrounding

Worcester, Massachusetts was reviewed;

vii.    Prior to October 18, 2001, and on or about the afternoon of October 15, 2001,

THOMAS M. FINNERAN participated in a meeting with the House Chairman of the Committee

and others, including one or more members of the House of Representatives from the area of

Lowell, Massachusetts, during which a redistricting plan for the districts in and surrounding

Lowell, Massachusetts was reviewed;

viii.    Prior to October 18, 2001, and on or about October 16, 2001, THOMAS M.

FINNERAN participated in a meeting with the House Chairman of the Committee and others,

during which a redistricting plan was reviewed; and

ix.    Prior to October 18, 2001, and on or about October 17, 2001, THOMAS M.

FINNERAN participated in a meeting with one or more members of the House of

Representatives from the area of Newton, Massachusetts, during which a redistricting plan for

5

the districts in and surrounding Newton, Massachusetts was reviewed.

All in violation of Title 18, United States Code, Section 1623.

**COUNT TWO:**    (18 U.S.C. § 1623 - Perjury)

The Grand Jury charges that:

      6. Paragraphs 1-4 are realleged and incorporated herein.

      7. On or about November 14, 2003, in Boston, in the District of Massachusetts, the

defendant,

### THOMAS M. FINNERAN,

having duly taken an oath that he would testify truthfully, and while under oath and testifying in

United States District Court in Boston, in the District of Massachusetts, before the Court in the

case Black Political Task Force v. Galvin, District of Massachusetts, Civil Number A 02-11190,

knowingly did make false material declarations, as follows:

Q     And was the -- was your review of the redistricting plan when it was
       distributed to the full House the first time you had information about the
       changes to your district in particular?

A     <u>Yes, it was, sir.</u>

Q     Had you spoken to Chairman Petrolati prior to that time about possible
       changes to your district?

A     <u>Not to my district.  No, sir.</u>

Q     Chairman Petrolati testified that he had spoken to all members of the
       House during the course of the process about their views with respect to
       redistricting. Were you an exception to that?  He didn't speak to you about
       your views on your district before the plan was drawn?

A     I think I've already testified, sir, that I spoke to Mr. Petrolati on several
       different occasions. Most of the time, those conversations would be
       around issues that are coming up in other districts. I am very, very
       cautious about my role as Speaker of the House. And my view of that role
       is that I have to always -- excuse me -- lead by example.

Q     But my question to you is: Are you testifying that you did not discuss with
       Mr. Petrolati – Representative Petrolati – in any of those conversations
       prior to the release of the committee plan any matters relating to the
       configuration of your district?

. . .

A       Related to my district?

Q       Yes.

A       No, sir, I did not.

The declarations of defendant THOMAS M. FINNERAN, which are underscored above, as he
then and there well knew and believed, were false, in that:

i.      On or about the afternoon of October 17, 2001, the House Chairman of the Joint
Special Committee on the Redistricting and Reapportionment ("the Committee") distributed to
each member of the House of Representatives a listing of proposed changes to that individual
member's district;

ii.     On or about October 18, 2001, the Committee filed its plan with the clerk of the
House of Representatives, and made that plan available to the general membership of the House
of Representatives;

iii.    Prior to October 17, 2001, and on or about October 9, 2001, THOMAS M.
FINNERAN, met with Thomas Petrolati, the House Chairman of the Committee, and others for
the purpose of reviewing a redistricting plan. At that meeting THOMAS M. FINNERAN,
Thomas Petrolati, and others reviewed a redistricting plan for each district in the Commonwealth
of Massachusetts, including a plan for changes to the 12th Suffolk District. At that meeting,
THOMAS M. FINNERAN, in the presence of Thomas Petrolati and others, reviewed proposed
changes to the precincts included in the 12th Suffolk District, and THOMAS M. FINNERAN
proposed to Thomas Petrolati and others specific changes to that district which were then
incorporated into the Committee plan for that district.

All in violation of Title 18, United States Code, Section 1623.

8

**COUNT THREE:**   (18 U.S.C. § 1623 - Perjury)

The Grand Jury charges that:

8. Paragraphs 1-4 are realleged and incorporated herein.

9. On or about March 18, 2003, THOMAS M. FINNERAN, through counsel for the Commonwealth of Massachusetts, notified the Black Political Task Force that, "the Speaker may be a witness at trial and he may testify about his vying for the support of Black, Hispanic, and 'other minority' persons in his district and his responsiveness to the particularized needs of Black, Hispanic, and 'other minority' persons in his district";

10. On or about March 21, 2003, the Black Political Task Force and other plaintiffs in the lawsuit served a Notice of Deposition on THOMAS M. FINNERAN. Attached to that Notice of Deposition as "Schedule A" was a request for documents, including 18 specific requests for documents in the custody and control of THOMAS M. FINNERAN. Request number 18 sought: "All documents which reflect, evidence, or describe campaign activities or events, including fundraisers, by or on behalf of Speaker Finneran at any time from 1990 to the present, including the location and nature of all such activities, events, and/or fundraisers";

11. On or about March 27, 2003, THOMAS M. FINNERAN, through counsel for the Commonwealth of Massachusetts, produced for the plaintiffs certain documents in response to the Notice of Deposition which had been issued by the Black Political Task Force and other plaintiffs in the lawsuit on or about March 21, 2003. The documents produced, consisting of approximately 83 pages, were primarily a series of "Dear Neighbor" letters to THOMAS M. FINNERAN's constituents, which reflected positively on his asserted responsiveness to the particularized needs of persons in his legislative district. By contrast, THOMAS M. FINNERAN did not produce any documents reflecting fundraisers or campaign activities which were held

9

outside his legislative district. In particular, no calendar reflecting the campaign activities, events and/or fundraisers held by or on behalf of THOMAS M. FINNERAN was provided to the Black Political Task Force and other plaintiffs at this or at any other time in the lawsuit;

12. On or about March 28, 2003, THOMAS M. FINNERAN was placed under oath and deposed by counsel for the Black Political Task Force as part of the discovery process in the lawsuit. During that deposition testimony, counsel for the Black Political Task Force sought to discover evidence relevant and material to the lawsuit, including evidence of THOMAS M. FINNERAN's responsiveness to the minority residents of the 12th Suffolk District. Among other things, counsel for the Black Political Task Force sought information regarding THOMAS M. FINNERAN's campaign activities, campaign events, and fundraising activities and events in the 12th Suffolk District and in other locations. The location, frequency, and nature of these events and activities were material to the claims the plaintiffs were seeking to prove in the lawsuit, and were material to the defenses being asserted in the lawsuit.

13. On or about March 28, 2003, in Boston, in the District of Massachusetts, the defendant,

THOMAS M. FINNERAN,

having duly taken an oath that he would testify truthfully, and while under oath and testifying in a deposition for the case Black Political Task Force v. Galvin, District of Massachusetts, Civil Number A 02-11190, knowingly did make false material declarations, as follows:

Q   With respect to Paragraph 18 [of Schedule A to the Notice of Deposition], are there any documents responsive to that request that would evidence campaign activities or events, including fundraisers, that were held by or on your behalf?

A   Nothing in addition to what has been provided.

10

Q    So you don't keep a diary or calendar that would show what events?

A    No, sir.

The declarations of defendant THOMAS M. FINNERAN, which are underscored above, as he

then and there well knew and believed, were false, in that there were numerous additional

documents kept by THOMAS M. FINNERAN and by his staff, including calendars containing

references to campaign activities and events, including fundraisers, that were responsive to

Paragraph 18 of "Schedule A" to the Notice of Deposition which were not provided.

All in violation of Title 18, United States Code, Section 1623.

**COUNT FOUR:**      (18 U.S.C. § 1503 - Obstruction of Justice)

The Grand Jury charges that:

14. Paragraphs 1-4 and 9-11 are realleged and incorporated herein.

15. On or about March 28, 2003, THOMAS M. FINNERAN was placed under oath and deposed by counsel for the Black Political Task Force in the lawsuit. During that deposition testimony, counsel for the Black Political Task Force sought to discover evidence relevant and material to the lawsuit, including evidence of THOMAS M. FINNERAN's involvement in crafting the plan issued by the Joint Special Committee on the Redistricting and Reapportionment ("the Committee"), and THOMAS M. FINNERAN's knowledge of other persons involved in crafting that plan. Counsel for the Black Political Task Force also sought evidence of THOMAS M. FINNERAN's knowledge of the changes made to his own district (12th Suffolk District) in the Redistricting Act, whether he had information related to the racial characteristics of the precincts he lost and gained in the Redistricting Act, and evidence of whether THOMAS M. FINNERAN participated in the "whitening" of the 12th Suffolk District. Counsel for the Black Political Task Force also sought to determine whether THOMAS M. FINNERAN possessed or maintained a calendar of campaign activities or events, including fundraisers, held by him or on his behalf. THOMAS M. FINNERAN provided misleading and false responses to questions put to him under oath during that deposition with the intent to obstruct the due administration of justice.

16. On or about November 14, 2003, THOMAS M. FINNERAN was placed under oath and testified in United States District Court in Boston in the lawsuit. During that testimony, THOMAS M. FINNERAN was asked, among other things, when he first saw a redistricting plan,

12

when he first had information about the changes to his legislative district, whether he spoke with Chairman Petrolati about any matters relating to the configuration of THOMAS M. FINNERAN's district before the release of the Committee's plan, and what was the nature of Lawrence DiCara's role in the redistricting process. THOMAS M. FINNERAN provided misleading and false responses to questions put to him under oath during this trial testimony, with the intent to obstruct the due administration of justice.

17. Between on or about March 28, 2003 and on or about November 14, 2003, in Boston, in the District of Massachusetts, the defendant,

THOMAS M. FINNERAN,

did corruptly endeavor to influence, obstruct, and impede the due administration of justice in that THOMAS M. FINNERAN did knowingly and willfully make misleading and false declarations while under oath in a civil deposition and while testifying under oath before the Court, with the intent to obstruct and impede the due administration of justice, including misleading and false statements concerning: (a) whether THOMAS M. FINNERAN had reviewed and seen a redistricting plan before the Committee plan was filed with the Clerk of the House of Representatives, as set forth in the trial testimony excerpted and underscored below (Paragraph 18); (b) when THOMAS M. FINNERAN first had information about the Committee's proposed changes to the 12th Suffolk District, as set forth in the trial testimony excerpted and underscored below (Paragraph 19); (c) whether THOMAS M. FINNERAN spoke with Chairman Petrolati about any matters relating to the configuration of the 12th Suffolk District, as set forth in the trial testimony excerpted and underscored below (Paragraph 20); (d) whether THOMAS M. FINNERAN had knowledge of the scope of the work performed by

13

Lawrence DiCara in the crafting of the Committee plan, as set forth in the trial testimony

excerpted and underscored below (Paragraph 21); (e) whether THOMAS M. FINNERAN had

information within his custody and control regarding the racial characteristics of the precincts

he lost in redistricting and the precincts he gained in redistricting, other than that to which he

testified in his deposition, as set forth in the deposition testimony excerpted and underscored

below (Paragraph 22); (f) the extent of THOMAS M. FINNERAN's knowledge, at the time of

his deposition, regarding what neighborhoods were removed from the 12th Suffolk District

during redistricting, the racial or ethnic characteristics of the areas which were removed from

the 12th Suffolk District during redistricting, the areas that were added to the 12th Suffolk

District during redistricting, and the racial characteristics of East Milton Square and Milton

Hill, as set forth in his deposition testimony excerpted and underscored below (Paragraph 23);

and (g) whether THOMAS M. FINNERAN had within his custody and control a calendar

which recorded campaign activities or events, including fundraisers, held by or on his behalf,

as set forth in the deposition testimony excerpted and underscored below (Paragraph 24).

14

18.    On or about November 14, 2003, THOMAS M. FINNERAN did knowingly and

willfully make the following declarations under oath:

Q    And did you review a number of the redistricting plans as the process
      proceeded?

A    No, I did not.

Q    Did you review any of the redistricting plans as the process proceeded?

A    Not as the process proceeded.  No sir.

Q    Okay.  When was the first time you saw a redistricting plan?

A    It would have been after the committee on redistricting filed its plan with
      the House Clerk as a member who has an interest.  All members do have
      an interest.  I would have availed myself of it and made a review of it.

Q    So the first time you saw a redistricting plan was when the redistricting
      committee disseminated its plan to the full House; is that your testimony?

A    That is my testimony. Yes, sir.

15

19.     On or about November 14, 2003, THOMAS M. FINNERAN did knowingly and

willfully make the following declarations under oath:

Q       Did you know what was going to be in that redistricting plan before it was
        distributed?

A       No, I did not.

. . .

Q       And was the -- was your review of the redistricting plan when it was
        distributed to the full House the first time you had information about the
        changes to your district in particular?

A       Yes, it was, sir.

20.    On or about November 14, 2003, THOMAS M. FINNERAN did knowingly and

willfully make the following declarations under oath:

Q    Had you spoken to Chairman Petrolati prior to that time [the distribution
     of the redistricting plan to the full House] about possible changes to your
     district?

A    <u>Not to my district. No, sir.</u>

Q    Chairman Petrolati testified that he had spoken to all members of the
     House during the course of the process about their views with respect to
     redistricting. Were you an exception to that? He didn't speak to you about
     your views on your district before the plan was drawn?

A    I think I've already testified, sir, that I spoke to Mr. Petrolati on several
     different occasions. Most of the time, those conversations would be
     around issues that are coming up in other districts. I am very, very
     cautious about my role as Speaker of the House. And my view of that role
     is that I have to always -- excuse me -- lead by example.

Q    But my question to you is: Are you testifying that you did not discuss with
     Mr. Petrolati – Representative Petrolati – in any of those conversations
     prior to the release of the committee plan any matters relating to the
     configuration of your district?

. . .

A    Related to my district?

Q    Yes.

A    <u>No, sir, I did not</u>.

17

21.     On or about November 14, 2003, THOMAS M. FINNERAN did knowingly and

willfully make the following declarations under oath:

Q       And Mr. DiCara was involved in helping to draw the lines, was he not, for
        redistricting?

A       I don't know specifically.  I assume that Larry DiCara offered counsel to any of
        the legal issues that may have come up.

18

22.     On or about March 28, 2003, THOMAS M. FINNERAN did knowingly and

willfully make the following declarations under oath:

Q     Do you have any other knowledge or information beyond what you have testified
to today about the racial characteristics of the precincts removed from your district
as a result of the 2001 redistricting?

A     No, I do not.

Q     Do you have any other knowledge or information about the ethnic characteristics
of the precincts removed from your district as a result of the 2001 redistricting?

A     No, I do not.

Q     Do you have any other knowledge or information about the racial characteristics
of the precincts added to your district as a result of the 2001 redistricting?

Q     No, I do not.

Q     Do you have any other knowledge or information about the racial or ethnic - strike
that - about the ethnic characters of the precincts added to your district as a result
of the 2001 redistricting?

A     No, I do not.

23.     On or about March 28, 2003, THOMAS M. FINNERAN did knowingly and

willfully make the following declarations under oath:

Q       How would you describe - how would you identify the areas that you lost?

A       Just city neighborhoods.

Q       Where were those neighborhoods?

A       I don't recall specifically.

Q       So as you sit here today, you don't recall which neighborhoods were in your
        district prior to redistricting but are no longer in your district? Is that your
        testimony?

A       That is my testimony, yes, sir.

Q       Do you have any knowledge or information about the racial or ethnic
        characteristics of the areas that were removed from your district as a result of the
        2001 redistricting?

A       No, I do not.

. . .  [Break in Deposition]

Q       Before the break we were talking about the composition of your district, and I
        believe my questions were directed at the areas that were added to your district as
        a result of redistricting in 2001. Let me ask you, do you know which areas were
        added to your district as a result of redistricting in 2001?

MR. PERLMUTTER: Objection. Asked and answered, but go ahead.

A       I do not know.

. . .

Q       Do you know anything or have any information about the racial characteristics of
        those areas in East Milton Square and Milton Hill?

A       I don't have any knowledge or information about them.

20

24.    On or about March 28, 2003, THOMAS M. FINNERAN did knowingly and

willfully make the following declarations under oath:

Q      With respect to Paragraph 18 [of a document production request], are there
       any documents responsive to that request that would evidence campaign
       activities or events, including fundraisers, that were held by or on your
       behalf?

A      Nothing in addition to what has been provided.

Q      So you don't keep a diary or calendar that would show what events?

A      No, sir.

       All in violation of Title 18, United States Code, Section 1503.

Case 1:05-cr-10140-RGS   Document 1   Filed 06/06/2005   Page 22 of 24

A TRUE BILL

FOREPERSON OF THE GRAND JURY

John T. McNeil
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; _____

Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK

12:57   6/6/05

22

JS 45 (5/97) - (Revised USAO MA 6/29/04)

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |
|---|---|

**Place of Offense:** _____    **Category No.** II_____    **Investigating Agency** FBI_____

**City** __Boston_____    **Related Case Information:**

**County** __Suffolk_____    Superseding Ind./ Inf. _____    Case No. _____
Same Defendant _____    New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name __THOMAS M. FINNERAN_____    Juvenile    ☐ Yes    ☒ No

Alias Name _____

Address __7 COUNTRYSIDE DRIVE, MATTAPAN, MASSACHUSETTS 02126_____

Birth date (Year only): __1950__ SSN (last 4 #): __1470__ Sex __M__ Race: __CAUC.____ Nationality: __USA_____

**Defense Counsel if known:** RICHARD M. EGBERT_____    **Address:** 99 Summer Street_____
Boston, MA 02110_____
**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** JOHN T. McNEIL_____    **Bar Number if applicable** 550473_____

**Interpreter:** ☐ Yes ☒ No    List language and/or dialect: _____

**Matter to be SEALED:** ☐ Yes    ☒ No

☐ **Warrant Requested**    ☒ **Regular Process**    ☐ **In Custody**

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____ in _____ .
☐ Already in State Custody _____ ☐ Serving Sentence ☐ Awaiting Trial
☐ On Pretrial Release: Ordered by _____ on _____

**Charging Document:**    ☐ Complaint    ☐ Information    ☒ Indictment

**Total # of Counts:**    ☐ Petty _____    ☐ Misdemeanor _____    ☒ Felony 4_____

Continue on Page 2 for Entry of U.S.C. Citations

☒    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date: JUNE 6, 2005**    **Signature of AUSA:** _____

JS 45  (5/97) - (Revised USAO MA 3/25/02)  Page 2 of 2 or Reverse

**District Court Case Number  (To be filled in by deputy clerk):** _____

**Name of Defendant**    **THOMAS M. FINNERAN** _____

**U.S.C. Citations**

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  __18 U.S.C. § 1623__ | __PERJURY__ | __1,2,3__ |
| Set 2  __18 U.S.C. § 1503__ | __OBSTRUCTION OF JUSTICE__ | __4__ |
| Set 3  _____ | _____ | _____ |
| Set 4  _____ | _____ | _____ |
| Set 5  _____ | _____ | _____ |
| Set 6  _____ | _____ | _____ |
| Set 7  _____ | _____ | _____ |
| Set 8  _____ | _____ | _____ |
| Set 9  _____ | _____ | _____ |
| Set 10 _____ | _____ | _____ |
| Set 11 _____ | _____ | _____ |
| Set 12 _____ | _____ | _____ |
| Set 13 _____ | _____ | _____ |
| Set 14 _____ | _____ | _____ |
| Set 15 _____ | _____ | _____ |

**ADDITIONAL INFORMATION:**

This case should not be assigned to Woodlock, J. or Ponsor, J.