## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　CRIMINAL ACTION
THOMAS M. FINNERAN,　　　　　　　)　　NO. 05-10140-RGS
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)

## MEMORANDUM OF GLOBE NEWSPAPER COMPANY IN SUPPORT OF MOTION TO VACATE OR MODIFY PROTECTIVE ORDER

Globe Newspaper Company, Inc. (the "Globe") respectfully submits this memorandum in support of its motion to vacate or modify the Protective Order entered by the Court on July 13, 2005.

## I.　　INTRODUCTION

On July 12, 2005, the parties jointly moved for entry of a protective order restricting the defendant's right to publicly disseminate discovery produced by the government. On July 13, 2005, the motion was granted and a Protective Order was entered in the form proposed by the parties.

The Protective Order applies to all documents (and the information contained therein) disclosed by the government to defense counsel ("Covered Materials"). Defense counsel is permitted to disclose Covered Materials only to (1) the defendant; (2) members of the legal defense team, including lawyers, staff, private investigators and experts; and (3) potential witnesses for the defense (provided that defense counsel has made a good faith determination that disclosure is necessary to the proper presentation of the defense and, provided further, that copies of the

documents are not provided to the potential witnesses).[1]

By its terms, the Protective Order prohibits the defendant and his counsel from publicly disclosing any information contained in any document provided by the government, regardless of the subject matter of the information or whether disclosure is in any way likely to interfere with the trial of the case. The Protective Order imposes no obligations on the government.

## II.    ARGUMENT

### A.    The Protective Order Is an Overly Broad Restriction On the Disclosure of Information Concerning a Matter of Legitimate Public Interest.

By prohibiting the defendant from publicly disclosing any and all information produced in discovery, the Protective Order is an overly broad and unnecessary restriction on the dissemination of information concerning a matter of legitimate public interest -- the prosecution of the former Massachusetts Speaker of the House on perjury charges. For the reasons set forth below, the Protective Order should be vacated or, in the alternative, substantially modified to permit the disclosure of information that does not create a substantial likelihood of material prejudice to the defendant's fair trial rights. *See generally Anderson v. Cryovac*, 805 F.2d 1, 6 (1st Cir. 1986) ("There is the potential for an infringement of the first amendment whenever the government prohibits or restrains free speech or publication.").

In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), the Supreme Court held that judicial orders restricting a party's ability to disseminate information obtained through discovery in a civil case do not offend the First Amendment

---

[1] The Protective Order also requires defense counsel to fully explain the terms of the Protective Order to anyone to whom Covered Materials are disclosed and to obtain from each such person an acknowledgment of the terms of the Protective Order and their agreement to comply with its terms. Defense counsel must notify the Court in writing of any person who is shown Covered Materials but refuses to endorse a copy of the Protective Order indicating his or her agreement to its terms.

- 2 -

provided that the orders are, *inter alia,* based on a showing of "good cause." 467 U.S. at 37. *See also Anderson,* 805 F.2d at 6-7. Several unique aspects of the civil discovery process supported the Court's application of the good cause standard to civil protective orders. As the Court observed, civil discovery is a "matter of legislative grace. A litigant has no First Amendment right of access to information made available only for purposes of trying his suit ... Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations." 467 U.S. at 32. *See also Anderson,* 805 F.2d at 6. Similarly, "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." 467 U.S. at 33. The potential for abuse inherent in the civil discovery process also weighed heavily in the Court's analysis:

> It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery. ... There is an opportunity, therefore, for litigants to obtain--incidentally or purposefully--information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.

467 U.S. at 34-35 (footnotes omitted).[2]

---

[2] The Court also noted that as long as a party may disseminate the identical information covered by a protective order if the information is gained through means independent of the court's processes, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicate the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context. 467 U.S. at 33-34.

- 3 -

Significant differences between the civil discovery process and a criminal defendant's discovery rights render the good cause test inapplicable to protective orders entered in criminal cases. For example, unlike a civil litigant who has a right to discovery only as a matter of "legislative grace," 467 U.S. at 32, a criminal defendant has a constitutional right to discovery in order to defend his liberty interests. *Brady v. Maryland,* 373 U.S. 83, 87 (1963); *Kyles v. Whitley,* 514 U.S. 419, 433-434 (1995). In addition, unlike a civil litigant, a criminal defendant has no right to obtain discovery of "unrelated, or only tangentially related," evidence. A criminal defendant only has the right to obtain exculpatory or inculpatory evidence that is <u>material</u> to his case, i.e., evidence that creates a "reasonable probability" of a different result by undermining confidence in the outcome of the trial. *Kyles,* 514 U.S. at 434. *Compare Seattle Times*, 467 U.S. at 33.

Moreover, court orders prohibiting criminal defendants from disseminating information about their guilt or innocence raise the very "specter of government censorship" not present in civil discovery cases in which the good cause standard strikes the appropriate balance. *Compare Seattle Times,* 467 U.S. at 32. As Justice Kennedy has stated, a criminal defense lawyer who challenges the basis for the government's prosecution of his client is engaged in "classic political speech" that is "critical of the government and its officials." *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1034 (1991) (Kennedy, J., concurring in the judgment). For similar reasons, criminal defense lawyers, whose speech may be regulated more readily than other citizens because of their obligations as officers of the court, are nevertheless free to publicly speak out concerning their cases unless their speech creates a "substantial likelihood of material prejudice" to fair trial interests. *Gentile,* 501 U.S. at 1075-76 (Rehnquist, C.J.) (Op. of the Court).

In sum, the notion that a defendant must quietly suffer the government's public charges of criminal wrongdoing is contrary to fundamental First Amendment

freedoms. In the words of Andrew Hamilton:

> It is a privilege, I will go farther, it is a right which all free men claim, that they are entitled to complain when they are hurt; they have a right publicly to remonstrate the abuses of power ... [W]ere this to be denied, then the next step may make them slaves. For what notions can be entertained of slavery, beyond that of suffering the greatest injuries and oppressions without the liberty of complaining.

*The Trial of John Peter Zenger*, 46 A.B.A.J. 27, 110 (1960).

The fact that the Protective Order was the result of a joint motion does not alter the governing constitutional analysis or preclude members of the public (including the Globe) from challenging the Order. A criminal defendant is perfectly entitled to pick his battles with the government (and the court) and decide not to oppose a motion seeking to restrict his ability to disclose discovery materials. Doing so certainly does not mean that the Protective Order is needed to safeguard the defendant's fair trial rights (except, perhaps, in the bizarre case where a defendant feels the need to obtain a court order to stop him from hurting himself by divulging prejudicial information). Nor does it mean that the defendant's position will not change in the future. Indeed, if persons subject to the Protective Order were not potentially willing speakers, there would be no need for the Order in the first place. More fundamentally, an agreement between the defendant and the government does not, and cannot, trump the First Amendment standards governing the issuance of Protective Orders. *See generally CBS v. Young*, 522 F.2d 234, 237 (6th Cir. 1975) (press had standing to challenge protective order to which it was not a party); *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 607 (2nd Cir.), *cert. denied*, 488 U.S. 946 (1988) ("It is hard, in fact, to imagine that there are no willing speakers. Without them there would be no need for a restraining order; it would be superfluous.").

- 5 -

### 1.     A Protective Order Restricting the Dissemination of Discovery Produced in a Criminal Case Should Issue Only upon a Showing of a "Substantial Likelihood of Material Prejudice."

Because the First Amendment interests implicated by orders restricting a criminal defendant's right to speak out about his prosecution are substantially more weighty than the interests implicated by protective orders issued in civil cases, the Globe respectfully submits that the proper legal standard governing the issuance of such orders is not whether good cause exists but, rather, whether disclosure will cause a "substantial likelihood of material prejudice" to fair trial interests. *See generally F.T.C. v. Standard Financial Management Corp.*, 830 F.2d 404 (1st Cir. 1987) (good cause standard for impoundment of judicial records is "correspondingly elevated" when case involves matters of significant public concern). This standard is consistent with the Supreme Court's ruling in *Gentile* governing restrictions on public comments made by defense counsel in a criminal case. 501 U.S. at 1075-76. It also is consistent with the standard set forth in Local Rule 83.2B governing the issuance of "Special Orders for the Protection of the Accused or the Litigants in Widely Publicized or Sensational Criminal or Civil Trials." That Local Rule provides:

> In a widely publicized or sensational criminal or civil case, the court, on motion of either party or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses *likely to interfere with the rights of the accused or the litigants to a fair trial by an impartial jury*, the seating and conduct in the courtroom of spectators and news media representatives, the management and sequestration of jurors and witnesses, and any other matters which the court may deem appropriate for inclusion in such an order.

Local Rule 83.2B (emphasis added). *See also* Local Rule 83.2A ("Release of Information by Attorneys) (prohibiting public disclosure of information "if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."

LITDOCS/609548.1

The Protective Order entered in this case cannot meet the standard of preventing a "substantial likelihood of material prejudice" to fair trial interests. The docket does not indicate that any factual submission was made in support of the Protective Order. *Compare In re Providence Journal Co.*, 293 F.3d 1, 14 (1st Cir. 2002) (district court cited "chapter and verse" of basis for entry of sealing order, including prior violations of Rule 6(e) and misconduct by prosecutor). Nor is there any indication that all information contained in the discovery documents poses a substantial threat -- or, indeed, any threat -- to fair trial interests. The Protective Order nevertheless applies indiscriminately to all discovery, regardless of whether disclosure is likely to prejudice fair trial interests or whether the same or similar information is available in the public record of this case (or the voting rights case that led in part to these proceedings) or may be obtained from third party witnesses who are not properly the subject of any court order restricting their free speech rights. Under these circumstances, the Globe respectfully requests that the Protective Order be vacated.

## 2.     The Protective Order Is Not Supported by a Showing of Good Cause.

Even assuming that court orders restricting the disclosure of discovery in criminal cases are governed by the same good cause standard applicable to civil cases, the Protective Order entered in this case still should be vacated or substantially modified. As the First Circuit held in *Anderson*, the *Seattle Times* Court "did not hold that a discovery protective order could never offend the first amendment." 805 F.2d at 7. To the contrary, "first amendment considerations cannot be ignored in reviewing discovery protective orders." *Id.* Accordingly, the First Amendment permits the issuance of a protective order governing pretrial discovery only if three criteria are met "(1) there is a showing of good cause as required by[Fed. R. Civ. P. 26(c)]; (2) the restriction is limited to the discovery

- 7 -

context; and (3) the order does not restrict the dissemination of information obtained from other sources." 805 F.2d at 37.

"A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson*, 805 F.2d at 7. No such factual demonstration has been made here. As noted above, this is not a case in which unlawful or prejudicial disclosures preceded the entry of the Protective Order. There certainly is no reason to assume that the defendant will disclose information prejudicial to his own fair trial interests, and there is no indication that defense counsel will not adhere to his ethical obligations or the requirements of Local Rule 83.2A. Nor is there any reason to assume that the government's case would be prejudiced absent the entry of a protective order. *See generally Gentile*, 501 U.S. at 1055 ("Respondent and its *amici* present not a single example where a defense attorney has managed by public statements to prejudice the prosecution of the State's case. Even discounting the obvious reason for a lack of appellate decisions on the topic -- the difficulty of appealing a verdict of acquittal -- the absence of anecdotal or survey evidence in a much-studied area of the law is remarkable.") (Kennedy, J., concurring in the judgment).

To be sure, given the nature of the charges, the prosecution of this case has generated legitimate public attention and some publicity. While "specific instances of massive and potentially harmful publicity" can in some cases support a finding of good cause, 805 F.2d at 8, the mere fact that a case has generated some publicity, or that jurors have obtained some knowledge about a case, does not demonstrate a realistic threat to a defendant's fair trial rights. *United States v. Stackpole*, 811 F.2d 689, 697 (1st Cir. 1987). *See also Patton v. Yount*, 467 U.S. 1025, 1035 (1984) ("[T]he relevant question is not whether the community remembered the case, but whether the jurors ... had such fixed opinions that they could not judge impartially the guilt of defendant[s]"); *Mu'Min v. Virginia*, 500 U.S. 415, 431-32 (1991) (barrage

of publicity before murder trial that included numerous items of inadmissible, prejudicial information did not require questioning of individual jurors about the content of the publicity, even where eight of twelve individuals seated admitted some exposure to pretrial publicity).

Through jury voir dire, "a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 15 (1986). In this manner, criminal defendants in other cases have received fair trials despite far greater publicity than has accompanied this case. *United States v. Anguillo*, 897 F.2d 1169, 1180-1184 (1st Cir.), *cert. denied*, 498 U.S. 845 (1990); *United States v. Moreno Morales*, 815 F.2d 725, 730-36 (1st Cir.), *cert. denied*, 484 U.S. 966 (1987).

Moreover, nothing in the publicity that has accompanied this case, or in the public record, demonstrates that every piece of information disclosed by the government, if publicly revealed, would pose a threat to the defendant's fair trial rights. The Protective Order's blanket application to all discovery materials therefore is not supported by good cause. *See generally Seattle Times*, 467 U.S. at 32, quoting, *Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (considering whether "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved" (internal quotations omitted); *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 12 n.6 (1st Cir. 1998) (applying good cause standard for impoundment of court records and concluding that redacted versions of documents sanitized of sensitive materials should be made available to the public).

Finally, even under *Seattle Times*, the Protective Order must not restrict the dissemination of information obtained from other sources. 467 U.S. at 34; *see also Anderson*, 805 F.2d at 37. Because the Protective Order applies to all discovery documents, "and information contained therein," the Order should at a bare

minimum be modified to clarify that it imposes no restrictions on the dissemination of information contained in discovery materials that also is contained in other documents or obtained from other sources not subject to the Protective Order.

## III.    CONCLUSION

For the foregoing reasons, Globe Newspaper Company, Inc. respectfully requests that the June 13, 2005 Protective Order be vacated or, in the alternative, modified to permit the disclosure of information that does not create a substantial likelihood of material prejudice to the defendant's fair trial rights.

**GLOBE NEWSPAPER COMPANY,**

By its attorneys,

Jonathan M. Albano, BBO #013850
Carol E. Head, BBO #652170
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000

Dated: July 26, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by facsimile and by mail on July 26, 2005.

Carol E. Head

- 10 -