**CERTIFICATE OF SERVICE**

This is to certify that I have this day served upon the person listed below a copy of the foregoing document and attachments by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

    Globe Newspaper Company, Inc.
    Jonathan M. Albano
    Carol. E. Head
    Bingham Mccutchen LLP
    150 Federal Street
    Boston, MA 02110

    The Associated Press
    Jonathan M. Albano
    Carol. E. Head
    Bingham Mccutchen LLP
    150 Federal Street
    Boston, MA 02110

    Boston Herald, Inc
    Elizabeth A. Ritvo
    Jeffrey P. Hermes
    Brown, Rudnick, Berlack
    One Financial Center
    Boston, MA 02111

Dated: August 26, 2005          By: /s/ John T. McNeil
                                        JOHN T. MCNEIL
                                        Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 05-10140-RGS |
| ) | |
| THOMAS M. FINNERAN, ) | |
| ) | |
| Defendant. ) | |

### Government's Opposition to Media Companies' Motions to Intervene And to Vacate Protective Order

The United States of America, by and through Assistant United States Attorney John T. McNeil, respectfully submits this opposition to motions filed by the Globe Newspaper, Inc. ("the Globe"), the Associated Press, and the Boston Herald, Inc. (collectively the "Media Companies") to intervene in this criminal action, and the Media Companies' joint motion to vacate or modify the Court's protective order dated July 13, 2005 ("Protective Order"). In sum, the Media Companies are not parties to the instant action and the Federal Rules of Criminal Procedure do not permit the intervention of third parties in a criminal case. Moreover, there is neither a common law right nor a constitutional right of public access to discovery in a criminal case, which might otherwise permit the Media Companies to press their claim in the instant action. Therefore, the Media Companies have no standing to challenge the Protective Order entered on July 13, 2005, and the Court should summarily deny the Media Companies' motions.

Even if the Court were to reach the merits of the Media Companies' claim, it should deny the joint motion to vacate or modify the Protective Order because that order was properly entered pursuant to Fed.R.Crim.P. 16(d)(1) (protective orders on discovery matters) and Local

1

Rule 116 (automatic discovery in criminal cases), was consistent with the Court's authority under Local Rule 83.2B (permitting appropriate special orders in widely publicized criminal cases), and furthered the objectives set forth in Local Rule 83.2A (restricting public comment by attorneys in criminal cases). Moreover, the Protective Order reflects the parties' agreement to expedite the discovery process while insuring that discovery materials produced by the government are used only for the legal defense of the defendant; this agreement not only substantially furthers the interests of justice in the instant case but provides a limited prophylaxis designed to ensure the parties' right to a fair trial and an impartial jury. The Protective Order does not impinge upon a recognized constitutional or common law right asserted by the Media Companies; it exclusively concerns the use to which defense counsel may put documents and information obtained directly from the government in the enhanced automatic discovery employed in this case.

## Background

On June 6, 2005, a grand jury returned an indictment against Thomas M. Finneran, the former Speaker of the Massachusetts House of Representatives. [Doc.No.1]. That indictment charges Finneran with three counts of perjury and one count of obstruction of justice in connection with his deposition testimony and trial testimony in a civil case captioned Black Political Task Force v. Galvin , District of Massachusetts, Civil Number A 02-11190. Id.

At the time of the indictment, Finneran was one of the most well-known public figures in Massachusetts. He had served in the state legislature for more than 20 years. From 1996 until the fall of 2004, Finneran served as the Speaker of the House. Because of his prominent political position and his style of governing the House of Representatives, Finneran was routinely

featured in local and regional news stories.

Prior to the indictment and during the course of the government's investigation, there was substantial speculation in the media that Finneran was the subject of a grand jury investigation. See Exhibit 1. From shortly after a decision by a three judge panel of this Court in February 2004 which was critical of Finneran's testimony in the Black Political Task Force case, until his indictment in June 2005, there were numerous media accounts citing sources who had allegedly testified in the grand jury. Id. The ultimate indictment was the subject of intense media interest, including stories on the front pages of Boston's newspapers and the lead stories on local broadcast outlets. Id.

On July 13, 2005, as part of the automatic discovery process, the government and the defendant filed a joint motion for a Protective Order. [Doc.No.8].[1] That motion, which appended a proposed order, sought to ensure that the documents and the information contained therein which were to be disclosed to the defendant by the United States would be used only for the defendant's legal defense. Id. The motion also sought to ensure that the documents provided to the defendant by the government were not disseminated by those individuals assisting in his defense or those individuals interviewed by the defendant's team in preparation for trial. Id.

While not so stated in the joint motion, it was the government's intention to disclose to the defendant under that Protective Order a substantial amount of discovery material before the government's obligation to produce such discovery arose under applicable law.[2] In particular, it

---

[1] A copy of the motion and the proposed order are attached as Exhibit 2.

[2] Attached as Exhibit 3 is an affidavit which provides a general outline of the documents produced to the defendant to date. If the Court reaches the merits of the Media Companies' motion to vacate and seeks a more detailed factual record of the documents disclosed to the

was the government's intention to disclose under that Protective Order the core Jencks material – which included a substantial portion of the grand jury investigation, including transcripts of the testimony of core witnesses and related grand jury documents, and witness interviews – long before the government was required by law to disclose such material.[3]  Thus, the entry of the Protective Order had the salutary effect of permitting the government to make early disclosures of discovery material, including grand jury information, to the defendant for the preparation of his defense substantially in advance of trial, while also providing some assurance to the government that the information would only be used as necessary for the defendant's legal defense.  Moreover, it remains in both parties' interest to ensure that potential jurors are not prejudiced by pretrial publicity caused by the selective release of discovery material, and that potential trial witnesses are not subject to pressure regarding their anticipated testimony.

      The Court executed the Protective Order on July 13, 2005. [Doc.No.9].  In accordance with that order, counsel for the defendant executed affirmations of receipt and compliance with the order on July 15, 2005 and July 28, 2005.  By letter dated July 28, 2005, the government made its enhanced automatic discovery disclosure to the defendant which included more than 30,000 pages of documents as well as videotapes, audiotapes, compact disks, floppy disks, and computer hard drives.  [Doc.No.11].  The substantial majority of this evidence disclosed to the defendant was grand jury material covered by Fed.R.Crim.P. 6(e).

---

defendant under the Protective Order, the government requests leave to file such an affidavit *in camera*.

   [3] Because the government has yet to finalize it list of trial witnesses and exhibits, it is likely that the disclosure made to the defendant under the Protective Order includes documents which the government would not have a legal obligation to produce to the defendant.

The Globe filed a motion to intervene and a motion to vacate or modify the protective order on July 26, 2005. [Doc.No.13, 14]. The Associated Press filed a motion to intervene and joined in the Globe's motion to vacate or modify on July 27, 2005. [Doc.No.15]. The Boston Herald, Inc. filed a motion to intervene and joined the Globe's motion to vacate or modify on August 23, 2005. [Doc.No.18].

## Argument

### I. The Media Companies Lack Standing to Intervene and Do Not Otherwise Have a Right of Public Access to Criminal Discovery Documents.

The Media Companies are not parties to this criminal action and lack standing to intervene in order to challenge the Protective Order. The Media Companies fail to cite a single case or applicable rule which holds that a member of the public has the ability to intervene in a criminal proceeding for the purpose of obtaining discovery material provided by the government to the defendant. Moreover, the government is unaware of any such case. The Court should therefore summarily deny the Media Companies' motions to intervene, and reject their related motion to vacate or modify the Protective Order.

While courts have recognized that a member of the public may contest a protective order issued in a criminal or civil case which infringes on a constitutional or common law right of public access to court records or hearings, the public has no right to discovery material which has not been filed with the Court or relied upon in some judicial proceeding. Indeed many courts – including this Court – have concluded that the public does not have a cognizable right of access to documents obtained by a party solely through discovery afforded by applicable civil or criminal rules, when those documents have not become part of the judicial record. See, e.g., United States v. Salemme, Crim.No. 04-10323-RGS (D.Mass. August 22, 2005) *Order on*

5

*Continued Sealing of an FBI Report Dated October 7, 2004* at fn.2 (". . . there is no First Amendment right of public access to the criminal discovery process in a pending case."); In re Boston Herald, Inc., 321 F.3d 174, 180 (1st Cir. 2002)("Both the constitutional and the common law rights of access have applied only to judicial documents."); Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) ("[P]retrial depositions and interrogatories are not public components of a civil trial . . . restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information"); In re Associated Press, 162 F.3d 503, 512 (7th Cir.1998) ("it is well established that discovered but not-yet-admitted evidence is not ordinarily within the scope of press access"); United States v. Wolfson, 55 F.3d 58, 60 (2d Cir. 1995) (no public right of access to documents submitted to court *in camera* as part of discovery dispute); Grove Fresh Distrib., Inc. v. Everfresh Juice Co., 24 F.3d 893, 897-98 (7th Cir.1994) ("until admitted into the record, material uncovered during pretrial discovery is ordinarily not within the scope of press access."); see also Public Citizen v. Liggett Group, 858 F.2d 775, 780 (1st Cir.1988) ("Certainly the public has no right to demand access to discovery materials which are solely in the hands of private party litigants.").

Since there is no public right of access to discovery material in criminal cases, and the Protective Order challenged by the Media Companies deals exclusively with discovery material provided by the government in the pretrial phase of this case, there is no ground on which a member of the public can intervene and attack that Protective Order. While the First Circuit has yet to decide this issue definitively, it has noted that "the right of a non-party to intervene in a criminal proceeding is doubtful." United States v. Hurley, 920 F.2d 88, 90 (1st Cir. 1990).

The two cases relied upon by the Media Companies provide no support for their motions

to intervene in this case.  In In re Boston Herald, Inc., the First Circuit did not address the issue of whether the Herald had properly intervened; it simply mentioned that the Herald had been permitted to intervene by the district court, without reference to any objection by the government.  321 F.3d at 177.  Even still, the claim brought in that case – that the public right of access extended to documents filed by the defendant with the court to establish that he did not have sufficient funds to retain his own attorney – was premised on longstanding common law and constitutional rights of access to judicial records in criminal cases.  Id.  As such, it was necessary for the district court and the First Circuit to evaluate whether the records fell within that widely recognized right and, if so, whether the defendant's countervailing privacy interests outweighed that right of access.  Id. 191.  By contrast, it is well-established that there is no public right of access to criminal discovery material.  See supra at 5-6.[4]  Thus, there is no need for this Court to engage in a balancing of competing rights which is necessary in cases where parties are seeking judicial records.  See, e.g., In re Providence Journal Company, Inc., 293 F.3d 1, 13 (1st Cir. 2002)(balancing constitutional right of public access against accused's Sixth Amendment right to a fair trial).

Likewise, the First Circuit in In re Globe Newspaper Co., 729 F.2d 47 (1st Cir. 1984), declined to hold that there is a basis for a member of the public to intervene in a criminal case for the purpose of seeking to open a bail hearing which the magistrate judge intended to close.  "We have not decided – nor do we now – whether a media representative may, absent a rule for intervention analogous to Fed.R.Civ.P. 24, 'intervene' in a criminal action for the purpose of

---

[4] Even if there were such a right of public access to discovery material, that right could not extend to discovery provided by the government in advance of its obligations under law pursuant to an agreement between the parties, as it was in this case.

appealing a closure order." <u>Id</u>. at 50 fn.2.  Thus, <u>In re Globe Newspaper</u> provides no support for the Media Companies' motions to intervene in this case.  In fact, like the petitioner in <u>In re Boston Herald</u>, the petitioner in <u>In re Globe Newspaper Co.</u> was seeking to enforce well-recognized rights of public access to a pretrial proceeding, rather than to challenge a protective order which addresses only documents for which there is no public right of access.

In the absence of a rule permitting a member of the public to intervene in a criminal case, or the assertion of a recognized common law or constitutional right of public access which could otherwise not be vindicated, there is no basis for permitting the Media Companies to intervene and challenge the Protective Order entered in this case.  Therefore, the motions should be summarily denied.

**II.     The Protective Order Was Properly Entered and Is Not Overly Broad.**

Even if the Court were to permit the Media Companies to intervene, it should reject the Media Companies' motion to vacate or modify the Protective Order.  The Protective Order was properly entered pursuant to Fed.R.Crim.P. 16[5] and Local Rule 116[6], was consistent with the

---

[5]   Fed.R.Crim.P. 16(d)(1) reads in pertinent part:

> **Protective and Modifying Orders**. At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief.

[6]   Local Rule 116 generally addresses the automatic discovery process under which the government discloses discovery material to a defendant.  Among other things, Local Rule 116 provides for a streamlined discovery process, a mechanism by which the government can decline to provide evidence to the defendant, and a mechanism by which the government can seek a protective order from making disclosures under the automatic discovery process.  In the absence of the Protective Order entered in this case, the government could have sought protection from certain disclosures under Local Rule 116.6.  The entry of the Protective Order not only expedited the government's disclosure of evidence to the defendant, but obviated the need for the government to exercise its rights under Local Rule 116.6 with respect to many documents.

Court's authority under Local Rule 83.2B[7], and furthered the objectives outlined in Local Rule 83.2A.[8] The Protective Order was the product of a joint motion of the parties and reflected an agreement between the parties which permitted the defendant to obtain from the government early disclosure of core Jencks material and other evidence, including grand jury material, while insuring that this discovery would not be used for an improper purpose or inadvertently disclosed to any person who is not participating in the defendant's legal defense. Moreover, given the extensive media coverage of this matter to date, the Protective Order furthers both parties' right to a fair trial and an impartial jury: it substantially reduces the likelihood that witnesses who testified in the grand jury will be subject to inappropriate influences prior to testifying at trial; and it reduces the likelihood of prejudicial pretrial publicity caused by the selective release of evidence, including grand jury testimony and documents obtained through grand jury subpoena.

While neither the joint motion nor the Protective Order recited the facts giving rise to the

---

[7] Local Rule 83.2B reads in pertinent part:

> In a widely publicized or sensational criminal or civil case, the court, on motion of either party or on its own motion, may issue a special order governing such matters . . . likely to interfere with the rights of the accused or the litigants to a fair trial by an impartial jury . . . and any other matters which the court may deem appropriate for inclusion in such an order.

[8] Local Rule 83.2A reads in pertinent part:

> No lawyer or law firm shall release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with the pending or imminent criminal litigation with which he or the firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

need for such an order, it was evident to the Court from the extensive publicity regarding the investigation and indictment of the defendant that this is a "widely publicized or sensational criminal or civil case," falling squarely within Local Rule 83.2B.  See Exhibit 1.  As such, the Court is permitted to enter orders which it "deem[s] appropriate" in such cases, and in order to for ensure the litigants' right to a fair trial and an impartial jury.  See Local Rule 83.2B.  Moreover, it is not fatal to the Protective Order that the facts giving rise to it are not cited by the Court;  when the parties agree that there are substantial benefits to the entry of such an order, make a joint motion for an order, and it is clear to the Court that the matter has been widely publicized, the recitation of such facts is not essential.  See, e.g., In re Special Proceedings, 373 F.3d 37, 45 (1st Cir. 2004)(rejecting claim that a protective order entered after a joint motion is unlawful for its failure to make findings on the need for the order).  The Court could readily infer from the joint nature of the motion, the language of the motion itself, and the extensive press coverage of this case that the requested order was appropriate.  Id.

Even if the Court accepts the Media Companies' argument that the entry of a protective order in this case required a showing of "good cause," the parties could readily make such a showing.[9]  First, as set forth above, the great majority of the material turned over to the

---

[9] The Media Companies argue that the Supreme Court's holding in Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984) requires the district court to make a finding of "good cause" before entering an order which restricts the dissemination of discovery material.  Globe Memorandum at 7-10.  In Seattle Times, the Supreme Court upheld an order which prohibited the dissemination of civil discovery material, concluding that "the unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." 467 U.S. at 36.  The Court went on to conclude that where "a protective order is entered on a showing of good cause, **as required by Rule 26(c),** is limited to the context of pretrial discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." Id. at 37 (emphasis added).  This holding did not impose a general requirement on all protective orders entered in civil and criminal cases, as

10

defendant under the Protective Order was evidence obtained through the grand jury process, including transcripts of witnesses who testified before the grand jury, and documents produced to the grand jury from numerous sources. As the First Circuit noted in In re Boston Herald, Inc., "[c]ourts have . . . held that no right of access applies to some . . . types of proceedings and documents. The paradigmatic example is the grand jury, whose proceedings are conducted in secret." 321 F.3d at 183. Thus, given that the great majority of the documents covered by the Protective Order are grand jury materials, and there is no public right of access to those materials at any point in time, there was more than "good cause" to enter the Protective Order. Moreover, based upon recent history, there is every reason to believe if they obtain access to such materials, the Media Companies will publicize them widely without regard to the defendant's or the government's right to a fair trial and an impartial jury.[10]

Second, as noted above, the Protective Order was agreed to by the parties as a mechanism for the government to provide the defendant with substantial evidence in advance of its

---

argued by the Media Companies. Rather, it simply confirmed that the district court had met the applicable standard in Fed.R.Civ.P. 26. In this case, the analogous criminal provision in Fed.R.Crim.P. 16(d)(1) also permits the entering of a protective order "for good cause." However, it imposes no requirement that the Court make a specific finding of good cause. In addition, Local Rule 83.2B permits a special order either on the Court's conclusion that sensational media coverage is "likely to interfere with the rights . . . of the litigants to a fair trial by an impartial jury," or as the Court "may deem appropriate." See Local Rule 83.2B.

[10] See, e.g., Boston Globe, December 3, 2002, at A1, *Bulger Stand: Loyal to Brother, Testified they Spoke in '95; Saw No Duty to Assist in Capture* (revealing leaked federal grand jury transcript); Boston Herald, August 22, 2005, at 1, 4-5, *'Obsessed' Feds, Report: They pressured mob witness in rush to convict agent* (revealing FBI 302 which was under Court seal); Boston Herald, August 23, 2005, at 6, *Judge probes leak of FBI debriefing* (revealing portion of FBI 302 placed under seal by Court). These articles are attached as Exhibit 4.

obligations under applicable law.[11]  This early disclosure of evidence to the defendant substantially advances the interests of justice in this case because it allows the defendant additional time to prepare his case, it permits the parties sufficient time to brief the essential issues before trial of this matter, and it avoids delays that might occur in the trial were voluminous amounts of Jencks material provided to the defendant a short time before trial.

The government was willing to make such an advance disclosure of evidence only on the defendant's assurance that the materials would be used exclusively for his legal defense, and that substantial efforts would be made to prevent any (intentional or inadvertent) disclosure of the materials.  In the absence of the Protective Order, the government would not have disclosed a significant portion of the material until it was required to do so by Fed.R.Crim.P. 16 and the Local Rules.  In addition, in the absence of disclosure to the defendant under the Protective Order, neither the Media Companies nor any other members of the public would have access to these materials.  See In re Boston Herald, 321 F.3d at 180 ("There is no general constitutional right of access to information in the government's possession," citing Houchins v. KQED, Inc., 438 U.S. 1, 15 (1978)(plurality opinion)).

The government insisted on such protections before making early disclosure because of the intense media interest in this case, and the possibility that potential witnesses could be subject to pressure – whether political or economic – to alter their testimony before trial.[12]  The

---

[11] For instance, the government has disclosed core Jencks material to the defendant under the Protective Order.  The government has no obligation to do so until after a witness testifies at trial.  See 18 U.S.C. §3500.

[12] The government makes no claim that the defendant or his counsel would undertake efforts to pressure potential witnesses.  However, given that the defendant is a public figure with some standing in the community, individuals who view his prosecution unfavorably have a

government also insisted on these protections to better ensure its right to a fair trial and an impartial jury. Thus, the Protective Order reflects a balance reached by the parties which permits the defendant the greatest opportunity to prepare his defense, while providing the government some assurance that the material disclosed will not be used to further sensationalize the case, or be misused by third parties. Thus, the "good cause" for the issuance of the Protective Order is in part the advance disclosure by the government of a substantial amount of discovery information.

Third, given the intense media interest in the case, there was good cause to believe that the early or selective release to the public of the evidence provided by the government – such as the grand jury transcripts or reports of interview – was likely to interfere with the litigants' right to a fair trial and an impartial jury. While the voir dire process may ferret out potential jurors who are biased, voir dire is imperfect and is ordinarily quite limited in this Court. Thus, the Protective Order provides an appropriate prophylaxis to the misuse of discovery material which could prejudice potential jurors, and the Protective Order is designed to prevent the harm rather than simply react to a harm already incurred. See, e.g., In re Providence Journal Company, Inc., 293 F.3d at 14 (noting that "a high-profile criminal case may impose unique demands on the trial court, and require the court to establish procedures for dealing effectively, efficiently and fairly with recurring issues" and approving the trial court's order designed to safeguard rights before they were violated)(quotations and citations omitted). While the Media Companies appear to suggest that restrictions on the release of discovery material are only permissible after there has

---

strong incentive to exercise either subtle or overt pressure on potential witnesses to undermine evidence of the defendant's guilt.

been a demonstration of harm to the defendant's right to a fair trial, such an argument is plainly inconsistent with Seattle Times, which found "good cause" for restrictions based on the potential economic harm to a party in a civil case, 467 U.S. at 26-27, and is inconsistent with Local Rule 83.2B, which contemplates the imposition of special orders to prevent harm to a litigants' rights.

The Media Companies press the Court to vacate the Protective Order or limit its applicability to only those documents the disclosure of which would "create a substantial likelihood of material prejudice to the defendant's fair trial rights." Globe Memorandum at 2. The Court should reject this argument because it seeks to impose a substantially higher standard than the "good cause" standard set forth in Fed.R.Crim.P. 16(d)(1), the "appropriate" standard set forth in Local Rule 83.2B, and the "good cause" standard upheld by the Supreme Court in Seattle Times, 467 U.S. at 37. Moreover, a standard which focuses exclusively on "the defendant's fair trial rights" fails to recognize the panoply of other rights, interests, and considerations which are at stake when courts impose protective orders regarding discovery, including, among others, the government's right as a litigant in this case to a fair trial and an impartial jury, the need to protect grand jury secrecy, the interest of the defendant in obtaining the early disclosure of the government's evidence, and the interest of the defendant and potential witnesses in the privacy of personal information which may be contained in discovery material.[13] In addition, at this early stage of the case it may be difficult for the Court to fully assess what particular piece of evidence the release of which would create a "substantial likelihood of

---

[13] For instance, in this case the government obtained the personal and professional calendars of a number of potential witnesses. Those witnesses have a substantial and legitimate privacy interest in keeping those calendars from public disclosure, particularly if they will not be introduced as evidence at trial.

14

material prejudice."

The Media Companies assert that this Court should impose a higher standard for the entry of a protective order in a criminal case than a civil case because a criminal prosecution is "substantially more weighty than . . . [a] civil case." Globe Memorandum at 6. This argument directly contravenes the "good cause" standard in Fed.R.Crim.P. 16(d)(1), and the "appropriate" standard in Local Rule 83.2B. Moreover, the fact that a criminal prosecution exposes an individual to the loss of his liberty is all the more reason to have a lower, rather than higher standard for the issuance of protective orders. Unlike in a civil case, a defendant's right to a fair trial is a paramount right, which is frequently cited for limiting the public right of access to judicial records and court proceedings. See, e.g., In re Providence Journal Company, Inc., 293 F.3d at 13; In re Globe Newspaper Co., 729 F.2d at 53. In addition, in criminal discovery matters the Court must, among other things, address the need to preserve grand jury secrecy, to ensure the protection of witnesses from retribution, and protect the privacy of third parties (particularly in the case of electronic interceptions pursuant to 18 U.S.C. §2518). These many rights and interests which weigh against the public release of discovery material in a criminal case argue for a lower rather than a higher standard for protective orders.

The Media Companies' claim that the Court should vacate the Protective Order because it requires the defendant to "quietly suffer the government's public charge of wrongdoing" must also be rejected. Globe Memorandum at 4. First, the Media Companies are in no position to assert the defendant's rights; the defendant is represented in this case and jointly moved for the Protective Order. It was clear to the defendant that his ability to prepare for trial would be substantially enhanced by the additional discovery material received under the Protective Order.

15

Moreover, the Protective Order does not restrict the defendant's right to speak about the case; it simply prevents him from using the evidence which he has been provided by the government under the Protective Order for a purpose other than his legal defense.

The notion that a member of the media is in a better position, or is better able, to protect the defendant's right to a fair trial or right to free speech, than is the defendant or his counsel is nonsensical.  For instance, the Media Companies' claim that the defendant may change his mind after the Protective Order is entered, and that the media is needed to protect him from a fickle assertion of his constitutional rights, completely fails to account for the fact that the defendant can move to modify the Protective Order at any time.  It also fails to account for the fact that the defendant has not objected to the Protective Order, and has already substantially benefitted by its entry.

The Media Companies are plainly attempting to press their true claim – that there should be a public right of access to criminal discovery material – under the guise of protecting the defendant's rights.  As set forth above, courts have routinely declined to find a public right of access to discovery material, either in common law or in the Constitution, and the Media Companies' claim should be rejected.  See supra at 5-6.  To the extent that the defendant's First Amendment rights are implicated, it should be left to him to assert those rights.

Finally, the Media Companies' alternative proposition, that the Protective Order should be modified so that it does not prohibit the dissemination of information obtained from sources other than the government discovery materials, is unnecessary.  The Protective Order is narrowly drawn to restrict the use of documents, and information contained therein, provided by the government to the defendant.  If that same information is obtained from another source, the

Protective Order does not impose any restrictions on the dissemination or publication of that information.[14] To the extent that the Court determines that the Protective Order lacks clarity on this issue, the government has no objection to a limited modification to make such a clarification.[15]

**Conclusion**

The Media Companies lack standing to intervene in this criminal case and their motions should be summarily denied. This Court should reject the Media Companies' attempt to cloak their interests in obtaining criminal discovery material under the guise of protecting or enhancing the defendant's rights.

Even if the Court chooses to review the merits of the Media Companies' claims, it should uphold the Protective Order. That order substantially advances the interests of justice in this case by permitting the government to make early disclosure of discovery material while ensuring the litigants' right to a fair trial and an impartial jury. There is ample basis to conclude that the Protective Order is appropriate under Local Rule 83.2B, and that it is based on "good

---

[14] Of course, whatever the source of the information, the defendant and his counsel remain bound by the restrictions in Local Rule 83.2A and related rules of professional conduct. See, e.g., Massachusetts Rule of Professional Conduct 3.6.

[15] In the event that the Court were to find some larger infirmity with the Protective Order, the government should be permitted to enforce the terms of the order against the defendant as an equitable matter, as it was only through this mechanism that the government made early disclosures of core Jencks and other evidence.

cause" under Fed.R.Crim.P. 16(d)(1).

                   Respectfully submitted,

                   MICHAEL J. SULLIVAN
                   United States Attorney

Date: August 26, 2005         By: /s/ John T. McNeil
                    JOHN T. MCNEIL
                    Assistant U.S. Attorney